IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PEGGY JONES                                                                    PLAINTIFF

v.                                          NO. 4:19cv234-BRW

LARRY JEGLEY, Prosecuting Attorney For Pulaski County,
In His Official Capacity; SYBAL JORDAN HAMPTON, In Her
Official Capacity As A Member Of The Arkansas Ethics
Commission; TONY JUNEAU, In His Official Capacity As A
Member Of The Arkansas Ethics Commission;
ASHLEY DRIVER YOUNGER, In Her Official Capacity As A
Member Of The Arkansas Ethics Commission; ALICE L.
EASTWOOD, In Her Official Capacity As A
Member Of The Arkansas Ethics Commission; LORI KLEIN, In
Her Official Capacity As A Member Of The Arkansas
Ethics Commission                                                            DEFENDANTS

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 0 5 2019

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

## **COMPLAINT**

1.     This is a civil action for declaratory and injunctive relief arising under the First

and Fourteenth Amendments to the Constitution of the United States.  This suit concerns the

constitutionality of Arkansas Code § 7-6-203(e), which imposes a "blackout period" barring

candidates from accepting or soliciting campaign contributions more than two years before an

election.

2.     The Blackout Period is facially invalid insofar as it stifles core political activity,

insofar as it limits Ms. Jones' right to political expression by preventing her from contributing

money to individuals that she wishes to support for election in the Arkansas 2022 election cycle.

Moreover, the Blackout Period also stifles Plaintiff's core political activity by preventing the

candidates of her choice from raising the funds required to run effective campaigns.

3.     The Blackout Period fails to advance the only legitimate governmental interest

relevant in this area – the prevention of *quid pro quo* corruption or its appearance.  *See*

*McCutcheon v. FEC*, 134 S. Ct. 1434, 1441-42 (2014). This law is therefore not appropriately

1

This case assigned to District Judge _Wilson_
and to Magistrate Judge _Kearney_

tailored to avoid the unnecessary abridgment of associational freedom. As a result, these laws are unconstitutional under the First and Fourteenth Amendments and relief is required to correct these abridgements.

**Jurisdiction and Venue**

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. This civil action arises under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Plaintiff seeks a declaration of her rights in this case of actual controversy within this court's jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a number of the Defendants are personally located in this district, and all of the Defendant's official duties are performed in this district. Additionally, a substantial part of the events giving rise to this claim occurred in this district.

**Parties**

6.      Plaintiff Peggy Jones is a resident of Pulaski County, Arkansas. Plaintiff has routinely contributed money to political candidates throughout her life. Plaintiff wishes to give money to support candidates that she believes will run for elective office in Arkansas during the 2022 election cycle, but is barred by the Blackout Period from making such contributions until after May 2020.

7.      Defendant Larry Jegley is the duly-elected prosecuting attorney of Pulaski County, Arkansas. Under Arkansas Code § 7-6-202, violations of the Blackout Period may be prosecuted as a Class A misdemeanor. At least one of the candidates that Plaintiff wishes to support is currently a resident of Pulaski County, Arkansas. Defendant Jegley therefore would be

2

responsible for prosecuting violations of the Blackout Period.  Defendant Jegley is sued only in his official capacity.

8.      Defendants Sybil Jordan Hamilton, Tony Juneau, Ashley Driver Younger, Alice L. Eastwood, and Lori Klein are sued in their official capacities as members of the Arkansas Ethics Commission.  Under Arkansas Code § 7-6-218, the Ethics Commission is empowered to levy fines against candidates who accept contributions in violation of the Blackout Period.

### Statement of Facts

9.      Arkansas Code § 7-6-203(e), which creates the Blackout Period, provides as follows:

> It shall be unlawful for any candidate for public office, any person acting in the candidate's behalf, or any exploratory committee to solicit or accept campaign contributions more than two (2) years before an election at which the candidate seeks nomination or election. This subsection shall not prohibit the solicitation or acceptance of a contribution for the sole purpose of raising funds to retire a previous campaign debt.

Violation of the provisions of the Blackout Period established by Section 7-6-203(e) can be prosecuted as a Class A misdemeanor under Section 7-6-202, or fined by the Ethics Commission under Section 7-6-218.

10.      Section 7-6-203(e) was adopted by Arkansas voters in 1996, as part of an initiated act that made seven amendments to Arkansas campaign finance laws.  Six of the seven amendments were immediately challenged and held to be unconstitutional. *See Russell v. Burris*, 146 F.3d 563 (8th Cir. 1998); *Arkansas Right to Life State PAC v. Butler*, 29 F. Supp. 2d 540 (W.D. Ark. 1998).

11.      Among the amendments invalidated in the *Butler* case was a blackout period that prohibited contributions from offered to, or accepted by, elected officials 30 days before, during,

3

and 30 days after any session of the General Assembly. *Butler* held that the blackout period in that case was not narrowly drawn to serve the state's compelling interest in battling corruption because "it does not take into account the fact that corruption can occur at any time, and that only large contributions pose a threat of corruption." 29 F. Supp. 2d at 553.

12.     The amendment codified in Section 7-6-203(e) was the only amendment that was not challenged immediately upon its enactment. Nevertheless, as set forth herein, the Blackout Period created by that provision is no less unconstitutional than its six contemporary amendments already held to be as such.

13.     Plaintiff is a longtime political activist who has routinely contributed money to candidates that she supports. Plaintiff has identified potential candidates that she wishes to support in the 2022 Arkansas election cycle by donating funds to their campaigns.

14.     Under the Blackout Period, however, Plaintiff is barred from donating funds to the 2022 candidates that she wishes to support until May 2020 (two years before the expected date of the 2022 primary election), at risk of subjecting her chosen candidate to civil and criminal liability. Plaintiff's political speech is thus chilled because she is barred for at least the next year from supporting candidates of her choosing in the 2022 election cycle.

## First Amendment Principles

15.     "Contribution and expenditure limitations operate in an area of the most fundamental First Amendment activities," *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam), implicating freedom of political speech and association. *Randall v. Sorrell*, 548 U.S. 230, 246 (2006) (plurality op.).

16. Laws that burden political speech are subject to strict scrutiny. *Ariz. Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2817 (2011); *see also McCutcheon v. FEC*, 134 S. Ct. 1434, 1445-46 (2014) (plurality op.).

17. Limits on contributions, such as those imposed by the Blackout Period, should be subject to strict scrutiny. Plaintiff recognizes that *McCutcheon* declined to announce whether the contributions limits at issue in that case should be subject to strict scrutiny, finding that they failed scrutiny even under the lesser standard imposed by the "closely drawn" test. *McCutcheon*, 134 S. Ct. at 1446.

18. Even if this Court declines to apply strict scrutiny to the Blackout Period, contribution restrictions may only be sustained "if the [Government] demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." *McCutcheon*, 134 S. Ct. at 1441 (quoting *Buckley*, 424 U.S. at 25); *Catholic Leadership*, 764 F.3d at 424.

19. Prevention of actual or apparent *quid pro quo* corruption is the only government interest sufficient to justify campaign finance restrictions, whether limits on contributions or expenditures. *McCutcheon*, 134 S. Ct. at 1450. The Supreme Court has recently clarified how narrowly this interest is defined. *Quid pro quo* corruption "captures the notion of a direct exchange of an official act for money." *Id.* at 1441. In reaffirming this narrow definition, the Court directly rejected the broader "influence" standard. "Reliance on a generic favoritism or influence theory...is at odds with standard First Amendment analyses because it is unbounded and susceptible to no limiting principle." *Citizens United*, 558 U.S. at 359 (internal quotation omitted).

5

20.     Although the *Butler* opinion preceded the Supreme Court's guidance in *McCutcheon* by nearly two decades, it recognized that blackout periods like the ones at issue here are not "means closely drawn" to avoid restricting fundamental political liberties.  Like the blackout period invalidated in *Butler*, the two-year restriction imposed by Section 7-6-203(e) fails to distinguish between "large contributions with the potential to corrupt and small contributions with no such corruptive potential."  29 F. Supp. 2d at 553.  Moreover, again like *Butler*, the two-year Blackout Period "fails to account for the fact that political corruption may occur at anytime."  *Id.*  Indeed, the Blackout Period at issue here is even less closely drawn than the one invalidated by *Butler*, because it includes non-incumbents who are at least two years from being capable of giving "a political *quid pro quo* to a contributor."  *Id.* at 552.

21.     The Blackout Period is facially invalid as a matter of law because it fails to address any threat of *quid pro quo* corruption.  The Supreme Court draws a material distinction between base and aggregate limits.  Base limits—that is, limits "restricting how much money a donor may contribute to *a particular* candidate or committee," can be appropriately directed at the *quid pro quo* threat.  *McCutcheon*, 134 S. Ct. at 1442; *Buckley*, 424 U.S. at 28 (noting that a base limit "focuses precisely on the problem of large campaign contributions[,] the narrow aspect of political association where the actuality and potential for corruption have been identified") (punctuation added).

22.     The Blackout Period, however, imposes additional limits on contributions beyond a base limit.  Such additional burdens must be justified by "some evidence of actual corruption or its appearance."  *Zimmerman v. City of Austin*, 881 F.3d 378, 392 (2018) (invalidating Austin's blackout period).   Here, there is no evidence that political

6

contributions made more than two years before an election are somehow more corrupting than contributions made less than two years before an election.

23.     Furthermore when, as here, Arkansas law already imposes a base limit on contributions to a particular candidate, "an additional limit on contributions beyond a base candidate limit that is already in place must be justified by evidence that the additional limit serves a distinct interest in preventing corruption that is not already served by the base limit." *Id.* Arkansas law already imposes a base limit on the amount Plaintiff can contribute to a candidate; there is no evidence that regulating *when* Plaintiff makes those contributions will somehow create an additional limitation of corruption.

24.     Even if a particular contribution limit is supported by the requisite governmental interest, and regardless of whether the Court applies strict or "closely drawn" review, the court "must assess the fit between the stated governmental objective and the means selected to achieve that objective. Or to put it another way, if a law that restricts political speech does not 'avoid unnecessary abridgment' of First Amendment rights, it cannot survive 'rigorous' review." *McCutcheon*, 134 S. Ct. at 1445 (internal citations omitted). The Government always bears the burden of justifying speech-restrictive laws, including in the campaign finance context. *Id.* at 1452. The state of Arkansas cannot meet that burden here, given the complete absence of any evidence that regulating the timing – as opposed to the amount – of campaign contributions will somehow reduce corruption.

## Request for Declaratory and Injunctive Relief

25.     Plaintiff re-alleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

26.     The Blackout Period imposed by Section 7-6-203(e) has deprived, and will continue to deprive, Plaintiff of her fundamental rights protected by the First and Fourteenth Amendments. Money damages cannot adequately compensate these constitutional injuries and, absent injunctive relief, the injuries will be irreparable.  Accordingly, appropriate injunctive relief and a declaration of the unconstitutionality of the statutes are necessary.

27.     The candidates that Plaintiff wishes to support each face a credible threat of prosecution if he solicits or accepts a political contribution before the narrow window for fundraising permitted under the Blackout Period opens.

28.     Plaintiff is not willing to expose the candidates that she supports to criminal and civil penalties and thus has been forced to refrain from engaging in core political activity pending vindication of her constitutional rights.

29.     The Blackout Period imposes a zero-dollar aggregate limit on solicitations by, and contributions to, candidates for a significant period of every election cycle. The Blackout Period functions effectively as a limit on campaign expenditures and should be subject to the scrutiny applied to expenditure limits. *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. at 2806 (2011); *Buckley*, 424 U.S. at 54-59 (striking down limit on total expenditures by federal candidates during an election cycle).

30.     Even if this Court views the Blackout Period's unique and severe burden as a contribution limit, it should be subject to strict scrutiny.

31.     However, whether under strict or closely drawn scrutiny, the Blackout Period cannot pass constitutional muster.

32.     The Blackout Period does not further the government's interest in preventing the actuality or appearance of *quid pro quo* corruption.

8

33.     Because the Blackout Period imposes an aggregate limit on contributions that does not address corruption as a matter of law, Section 7-6-203(e) is facially unconstitutional for lack of any cognizable government purpose.

34.     In addition, the Blackout Period is not appropriately tailored for numerous reasons. These reasons include, but are not limited to, the following: (a) the Blackout Period necessarily limits contributions at certain times to zero despite the fact that at other times persons may contribute larger amounts that the state has determined to be non- corrupting; and (b) the state has already addressed its legitimate anticorruption interest with other measures, including stringent base limits and robust reporting requirements making available detailed information about contributions to the public.  The absolute temporal ban on Plaintiff's political speech is therefore not tailored to the state's interest in combating corruption.

35.     The Blackout Period also violates Plaintiff's First Amendment rights by preventing her from hearing the views of candidates who cannot raise money with which to disseminate their views.

36.     The Blackout Period has deprived, and will continue to deprive, Plaintiff of her fundamental rights protected by the First and Fourteenth Amendments.  Money damages cannot adequately compensate these constitutional injuries and, absent injunctive relief, the injuries will be irreparable.  There is no adequate remedy at law and therefore injunctive relief is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.     A declaratory judgment that Arkansas Code § 7-6-203(e) is facially unconstitutional under the First Amendment to the United States Constitution;

9

2.      A declaratory judgment that Arkansas Code § 7-6-203(e) is unconstitutional under the First Amendment to the United States Constitution as applied to Plaintiff;

3.      A preliminary and permanent injunction enjoining Defendants from enforcing Arkansas Code § 7-6-203(e);

4.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 or any other applicable statute or authority; and

5.      Any other relief that the Court deems just and appropriate.

> QUATTLEBAUM, GROOMS & TULL PLLC
> 111 Center Street, Suite 1900
> Little Rock, Arkansas 72201
> Telephone: (501) 379-1700
> Facsimile: (501) 379-1701
> jtull@qgtlaw.com
> cpekron@qgtlaw.com
> ckeller@qgtlaw.com
> bford@qgtlaw.com

By: _____
    John E. Tull III, Ark. Bar No. 84150
    Chad W. Pekron, Ark. Bar No. 2008144
    Christoph Keller, Ark. Bar. No. 2015145
    Brittany S. Ford, Ark. Bar No. 2018102

*Attorneys for Plaintiff*