## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**PEGGY JONES**                                                                                    **PLAINTIFF**

**V.**                              **Case No. 4:19-CV-234-JM**

**LARRY JEGLEY, Prosecuting Attorney for Pulaski County,
In His Official Capacity; SYBAL JORDAN HAMPTON, In Her
Official Capacity As A Member Of The Arkansas Ethics
Commission; TONY JUNEAU, In His Official Capacity As A
Member Of The Arkansas Ethics Commission;
ASHLEY DRIVER YOUNGER, In Her Official Capacity As A
Member Of The Arkansas Ethics Commission; ALICE L.
EASTWOOD, In Her Official Capacity As A
Member Of The Arkansas Ethics Commission; LORI KLEIN, In
Her Official Capacity As A Member Of The Arkansas
Ethics Commission**                                                                     **DEFENDANTS**

### RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

Defendants offer the following response in opposition to Plaintiff's motion for preliminary injunction. Plaintiff's motion should be denied, and the case dismissed. First and foremost, Plaintiff does not have standing because she is not under prosecution, she has not engaged in conduct that would subject her to prosecution, and she fails to present an actual, ongoing case or controversy within the meaning of Article III of the United States Constitution. Moreover, Plaintiff has not shown, and cannot show, that Ark. Code Ann. § 7-6-203(e) is unconstitutional. The Court should deny Plaintiff's constitutional challenge.

### I.    INTRODUCTION

Plaintiff, Peggy Jones, brings a challenge to the constitutionality of Ark. Code Ann. § 7-6-203(e), under the First Amendment to the United States Constitution, stating it is not closely drawn to address an important governmental interest. Plaintiff further contends that the statute is overbroad because it bars all contributions to political campaigns more than two years before an

1

election.  Plaintiff claims to be a resident of Pulaski County, Arkansas, who desires to contribute to unidentified political candidates for the 2022 election cycle.  (Doc. No. 1, ¶ 6).  However, Plaintiff states Ark. Code Ann. § 7-6-203(e) in its current form prevents her from doing so until after May 2020.  (Doc. No. 1, ¶ 6).  It is Plaintiff's contention that Pulaski County Prosecutor Larry Jegley would be responsible for prosecuting Plaintiff in the event she were to contribute earlier than Ark. Code Ann. § 7-6-203(e) currently permits.  (Doc. No. 1, ¶ 7).  And, in the event that she contributes earlier than permitted, Plaintiff states that the named members of the Arkansas Ethics Commission are empowered by Ark. Code Ann. § 7-6-218 to levy fines against any such candidate who accepted a potentially premature contribution in violation of Ark. Code Ann. § 7-6-203(e).  (Doc. No. 1, ¶ 8).

Plaintiff is currently free to donate to candidates of her choosing, but is currently hesitant to do so in light of potential prosecution of herself and the potential for fines against her chosen candidates.  There are currently no criminal charges pending against the Plaintiff under Ark. Code Ann. § 7-6-203(e).  The complaint does not allege that Plaintiff or any other person has served a sentence, paid a fine, or otherwise endured punishment by the State for violation of Ark. Code Ann. § 7-6-203(e).  Nor does the complaint allege any candidate has been fined for any violation of Ark. Code Ann. § 7-6-203(e).

## II.    STANDARD OF REVIEW

Statutes are presumed to be constitutional, and Courts do not concern themselves with the merits of statutory policy.  *See INS v. Chadha*, 462 U.S.  919, 944 (1983) ("We begin, of course, with the presumption that the challenged statute is valid.  Its wisdom is not the concern of the courts; if a challenged action does not violate the Constitution, it must be sustained"); s*ee also Fairbank v. United States*, 181 U.S. 283, 285 (1901) ("The constitutionality of an act of

Congress is a matter always requiring the most careful consideration.  The presumptions are in favor of constitutionality, and before a court is justified in holding that the legislative power has been exercised beyond the limits granted, or in conflict with restrictions imposed by the fundamental law, the excess or conflict should be clear."); *Estate of Branson v. O.F. Mossberg & Sons*, 221 F.3d 1064, 1064 n. 4 (8th Cir. 2000) ("[S]tate statutes are presumed constitutional, and the plaintiff has the burden to show otherwise.").  "[T]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)).  Restrictions on political contributions will be upheld if "the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." *McCutcheon v. Federal Election Comm'n*, 572 U.S. 185, 197 (2014) (quoting *Buckley v. Valeo*, 424 U.S. 1, 25 (1976)).

Furthermore, the United States Supreme Court and the Eighth Circuit Court of Appeals have made clear that a request for preliminary injunction is an extraordinary and drastic remedy, and should not be granted unless a plaintiff clearly carries his or her burden of persuasion.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."); *Sanborn Mfg. Co. v. Campbell/Hausfield Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir. 1993) (the burden on the movant "is a heavy one").  In this case, Plaintiff cannot meet the four elements set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981).  The motion for preliminary injunction should be denied.

3

### III.     ARGUMENT

#### A.   **Plaintiff does not have standing.**

Plaintiff's request for preliminary injunction should be denied, and the complaint dismissed, because Plaintiff cannot meet the necessary elements to establish standing and, thus, confer jurisdiction on this Court.  The party invoking federal jurisdiction bears the burden of establishing the elements of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547-49 (2016).  "[A] federal court lacks jurisdiction over a case unless the plaintiff has standing to sue under Article III of the Constitution."  *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 935 (8th Cir. 2012).  Accordingly, "[w]hether there is Article III standing to hear a claim is always an antecedent question."  *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.s. 83, 94-96 (1998)).  Article III of the United States Constitution grants the judicial branch the authority to adjudicate "cases" and "controversies."  *Id.*  "In order to invoke the jurisdiction of the federal courts, the parties must demonstrate an actual, ongoing case or controversy within the meaning of Article III of the Constitution."  *Iron Cloud v. Sullivan*, 984 F.2d 241, 242 (8th Cir. 1993).

Courts have "no business" deciding legal disputes or expounding on law in the absence of a case or controversy.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).  "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."  *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 408 (2013) (citations omitted).  An "actual controversy" must exist at the beginning of the case, and must persist through "all stages" of the litigation.  *Alvarez v. Smith*, 558 U.S. 87, 92 (2009); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not

merely at the time the complaint is filed."). A federal court is not empowered "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks omitted). Nor is a federal court empowered with "an unconditioned authority to determine the constitutionality of legislative or executive acts." *Valley Forge Christian Coll. v. Am. Utd. for Sep. of Church and State, Inc.*, 454 U.S. 464, 471 (1982). "Relaxation of standing requirements is directly related to the expansion of judicial power." *Clapper*, 568 U.S. at 408-09 (quoting *United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring)).

Article III standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968). To establish standing under Article III, a plaintiff must show that: (1) he or she personally has suffered some actual or threatened injury as a result of the allegedly illegal law; (2) the injury can fairly be traced back to the challenged action of the defendant; and (3) the injury is likely to be redressed by a favorable decision by the Court. *See Valley Forge Christian Coll.*, 454 U.S. at 472. Although a plaintiff "does not have to await the consummation of threatened injury to obtain preventative relief[,]" the injury must all the same be "certainly impending[.]" *Id*. Standing is "assessed under the facts existing when the complaint is filed." *Lujan,* 504 U.S. at 560 (plurality opinion). It is a jurisdictional issue that this Court "is bound to ask and answer for itself, even when not otherwise suggested." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). "As a general rule, a plaintiff may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-

99 (1975)).  As such, a party must establish Article III standing "to assert *this* claim against *these* defendants."  *Duit Construction Co., Inc. v. Bennett*, 796 F.3d 938, 939 (8th Cir. 2015) (emphasis in original) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

More particularly, "in the First Amendment context, even though Plaintiffs are not required to await and undergo a criminal prosecution, they must face a *credible* threat of present or future prosecution under the statute for a claimed chilling effect to confer standing to challenge the constitutionality of a statute that both provides for criminal penalties and abridges First Amendment rights."  *Zanders v. Swanson*, 573 F.3d 591, 593 (8th Cir. 2009) (emphasis added) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *Minn. Citizens Concerned for Life v. FEC*, 113 F.3d 129, 131 (8th Cir. 1997)).  Although a chilling effect alone *could* constitute an injury for standing purposes, it must still be objectively reasonable.  *Id.* at 593-94 (citing *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 487 (8th Cir. 2006); *Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004)).  Therefore, it reasonably follows that the party challenging a statute on the basis of a chilling effect on his or her First Amendment rights "'must present more than allegations of a subjective chill,' however, and must allege a 'specific present objective harm or a threat of specific future harm' to establish standing."  *Miller v. City of St. Paul*, 823 F.3d 503, 506 (8th Cir. 2016) (quoting *Eckles v. City of Corydon*, 341 F.3d 762, 767 (8th Cir. 2003)).

"[A] plaintiff 'suffers Article III injury when [he or she] must either make significant changes … to obey the regulation, or risk a criminal enforcement action by disobeying the regulation.'"  *Zanders*, 573 F.3d at 594 (quoting *Minn. Citizens*, 113 F.3d at 131).  In other words, plaintiffs must "assert[] facts that affirmatively and plausibly suggest that they are indeed subject to a credible threat of prosecution under the statute for engaging in the conduct for which

6

they invoke constitutional protection." *Id*. (citing *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007); *Klobuchar*, 381 F.3d at 792-93); *see also Turkish Coalition of America, Inc. v. Bruininks*, 678 F.3d 617, 622 (8th Cir. 2012).

In this case, Plaintiff is not under prosecution.   Nor is Plaintiff under threat of prosecution.   Moreover, Plaintiff alleges she is refraining from engaging in conduct prohibited by Ark. Code Ann. § 7-6-203(e).   However, Plaintiff is in no realistic danger of sustaining any actual, or threatened, injury as a result of the application of the challenged statute against her. Plaintiff has not stated, with particularity, and in accordance with Fed. R. Civ. P. 8(a), any certain candidate or campaign she wishes to support with campaign contributions.   Nor has Plaintiff stated or acknowledged any alternative option for her potential contributions, or whether any exploratory committee exists.   Plaintiff also has not stated if any such candidate announced their intention to run for office.

"Here, however, Plaintiff[]… do[es] not face a credible threat of prosecution–the 'risk' [she] face[s] is too speculative."   *Zanders*, 573 F.3d 591, 594.   Certainly, in light of the preceding law and information, there is no actual or ongoing case or controversy within the meaning of the United States Constitution.   Because there is no case or controversy before this Court, Plaintiff consequently lacks standing to challenge the constitutionality of Ark. Code Ann. § 7-6-203(e).   And, in any event, any person who actually is charged with a violation of Ark. Code Ann. § 7-6-203(e) may *then* assert a constitutional challenge against the statute in defense against the misdemeanor charge, assuming for argument purposes any such prosecutor exercises prosecutorial discretion to pursue any such charge.   Then, at that point, any such person would, plainly, have standing to do so.   Nevertheless, a person who is not under prosecution should not be permitted to file suit in federal court to seek an advisory opinion, and it is objectively

unreasonable under these circumstances for Plaintiff to allege a First Amendment chilling effect. *See Miller,* 823 F.3d 503, 506. It suffices to say that Plaintiff does not have standing; this prevents the Court from addressing her preliminary injunction request, accordingly. Alternatively, the Court should deny her request for preliminary injunction.

> **B. All members of the Ethics Commission are entitled to sovereign immunity and should be dismissed.**

Sovereign immunity bars Plaintiff's complaint, and by extension her request for preliminary injunction, against the named members of the Arkansas Ethics Commission. In *Ex Parte Young*, 209 U.S. 123, 15 (1908), "the Supreme Court held that the Eleventh Amendment does not bar a suit against a state official to enjoin enforcement of an allegedly unconstitutional statute, *provided that* 'such officer [has] some connection with the enforcement of the act.'" *Reprod. Health Servs. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (emphasis added). Absent that connection, the officer "is merely … a representative of the state," and Eleventh Amendment immunity applies. *Ex Parte Young*, 209 U.S. at 157; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-03 (1984). The Supreme Court has explained that the purpose behind the *Ex Parte Young* doctrine and the limited circumstances under which sovereign immunity does *not* bar a suit against State officials: "Rest[ing] on the premise—less delicately called a fiction—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he [or she] is not the State for sovereign-immunity purposes. *The doctrine is limited to that precise situation*." *VA Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (emphasis added). This is narrowly applied to prospective injunctive relief designed to remedy ongoing violations of federal law by State actors. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see also Papasan v. Allain*, 478 U.S. 64, 68 (1985).

Plaintiff is not a political candidate; rather, she is a private citizen who wishes to contribute to political campaigns more than two years before an election.  (Doc. No. 1, ¶ 6; Doc. No. 14, p. 1).  Because the Arkansas Ethics Commission members are empowered to levy fines against *candidates* who accept contributions beyond what is permitted in accordance with Ark. Code Ann. § 7-6-203(e), Plaintiff has sued the Commission's individual members as mere representatives of the State.  (Doc. No. 1, ¶ 8).  Importantly, Plaintiff fails to allege that the Ethics Commission has committed or continues to commit any ongoing *action* that violates her rights under the United States Constitution.  To the contrary, any potential violation(s) of Ark. Code Ann. § 7-6-203(e) would be enforced by the Pulaski County Prosecutor against Plaintiff, as a private citizen and non-candidate – but not by the Arkansas Ethics Commission.  (Doc. No. 1, ¶¶ 6-8).  The Arkansas Ethics Commission has no say, at all, about whether or not the Pulaski County Prosecutor, or any of the other prosecutors for the remaining 74 counties in Arkansas, exercises discretion about whether to enforce Ark. Code Ann. § 7-6-203(e).  Consequently, all of the members of the Arkansas Ethics Commission are entitled to sovereign immunity, and Plaintiff's complaint against them is barred by sovereign immunity.  Therefore, even assuming the Court finds the Plaintiff has standing, her request for preliminary injunction against the Arkansas Ethics Commission members should be denied, and the complaint against them should be outright dismissed.

       C.  **The Court should abstain and defer to the authority of State Courts to interpret Arkansas law.**

Additionally, or in the alternative, the Court should abstain from addressing the constitutionality of Ark. Code Ann. § 7-6-203(e) and defer to the authority of the Arkansas state courts to interpret Arkansas state law.  *See e.g. Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397-98 (1988) (noting that if a state law is readily susceptible to a narrowing construction

that would make it constitutional under First-Amendment challenge, then the statute will be upheld; noting that the state appellate court had not had the opportunity to consider the statute in question; and certifying a question to the state supreme court regarding what meaning should be given to a statute prohibiting display of certain materials in a manner whereby juveniles may examine or peruse the materials).  Any application of the challenged statute would and will take place in the Arkansas state court system.  There, assuming a prosecutor exercises discretion and elects to prosecute a party for an alleged violation of the statute, such a party will have the opportunity to challenge the statute's constitutionality and obtain a state-court ruling on the matter.

Here, Plaintiff has not been charged with violation of Ark. Code Ann. § 7-6-203(e), or so much as made an allegation that the Pulaski County Prosecutor has threatened her with prosecution.  Indeed, Plaintiff's complaint does not allege any person has been threatened with prosecution for allegedly violating the statute, that any person has been charged with violating the statute, that any person has been found guilty of violating the statute, that any person has paid a fine for violating the statute, or that any person has otherwise endured punishment by the State for violation of Ark. Code Ann. § 7-6-203(e).  Nor does the complaint allege that any person has been convicted under this law without the opportunity to challenge the law in state court.  Any person charged under Ark. Code Ann. § 7-6-203(e) will have the opportunity to bring the same constitutional challenges that the Plaintiff seeks to bring in this case.  And, in any such case, either that particular Defendant will prevail on his or her constitutional argument, or if a lower court sustains the statute, the Defendant will have the opportunity to appeal and the Arkansas Supreme Court can have the opportunity to ultimately consider and decide the issue.

The Arkansas Supreme Court should have the first opportunity to consider the constitutionality of Ark. Code Ann. § 7-6-203(e).  If the statute is enforced as Plaintiff contends it *might* be enforced, a state appeal presenting the constitutional question may be pursued in ordinary course without irreparable harm to Plaintiff or others actually charged under the statute. Therefore, this Court should abstain and defer to the authority of the Arkansas courts to interpret state law.  *Erzonznik v. City of Jacksonville*, 422  U.S. 205, 216 (1975) ("[W]hen considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program.  In accommodating these competing interests the Court has held that a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts, and its deterrent effect on legitimate expression is both real and substantial.") (internal citations omitted); *United Food & Commercial Workers Intern. Union, AFL-CIO, CLC v. IBP, Inc.*, 857 F.2d 422, 431 (8th Cir. 1988) ("[A] state statute should be deemed facially invalid only if (1) it is not readily subject to a narrowing construction by the state courts and (2) its deterrent effect on legitimate expression is both real and substantial.  In considering the possibility of a narrowing construction, however, the court must bear in mind that federal courts are generally without authority to construe or narrow state statutes.   Federal courts do not sit as a super state legislature, and may not impose their own narrowing construction if the state courts have not already done so.") (internal citations and quotations omitted).  For this reason, the Court should deny Plaintiff's request and dismiss.

> D.  **Ark. Code Ann. § 7-6-203(e) is constitutional because it supports a ban on corruption, which is an important governmental interest, and its timeframe is reasonably drawn to accomplish this important governmental interest.**

In the event the Court is not inclined to agree with the preceding arguments, Ark. Code Ann. § 7-6-203(e) still satisfies the closely-drawn test pursuant to *Buckley v. Valeo*, 424 U.S. 1,

25 (1976).  This test requires the Court to "assess the fit between the stated governmental objective and the means selected to achieve that objective."  *McCutcheon v. Federal Election Comm'n*, 572 U.S. 185, 199.  This test applies to both temporal limitations on contributions and dollar limitations on contributions.  *Zimmerman v. City of Austin, Texas*, 881 F.3d 378, 391 (5th Cir. 2018); *see also Thalheimer v. City of San Diego*, 645 F.3d 1109, 1122 (9th Cir. 2011) ("[A] temporal ban is an even more '*marginal* restriction upon the contributor's ability to engage in free communication' than a dollar cap.") (quoting *Buckley*, 424 U.S. at 20-21) (emphasis added)).  Federal courts should not be in the business of fine-tuning rules on campaign limits and time restrictions.  *See Nixon v. Shrink Missouri PAC*, 528 U.S. 377, 387-88 (2000) (quoting *Buckley*, 424 U.S. at 30) (dollar amount of contribution limit need to be "fine-tuned); *see also O'Toole v. O'Connor*, 802 F.3d 783, 791 (6th Cir. 2015) ("while the specific time limit … may appear arbitrary, it is exactly this type of line-drawing" that federal courts have been cautioned against wading into.)).

More particularly to the *Buckley* closely-drawn test, and as Plaintiff acknowledges and assumes, preventing corruption or the appearance of corruption is a legitimate governmental interest.  *McCutcheon*, 572 U.S. at 207.  (Doc. No. 14, p. 6).  Indeed, "[t]he importance of the governmental interest in preventing [corruption] has never been doubted."  *Federal Election Com'n v. Beaumont*, 539 U.S. 146, 154 (2003) (quoting *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 788, n. 26 (1978)).  And, combatting the appearance of corruption is a governmental concern of nearly the same magnitude as combatting actual corruption itself.  *Wagner v. FEC*, 793 F.3d 1, 8 (D.C. Cir. 2015) (en banc) (appearance of corruption "threatens 'confidence in the system of representative Government.")).  Therefore, it reasonably follows that not only is "the Government's interest in preventing *quid pro quo* corruption or its appearance … sufficiently

12

important," but also "the same interest may properly be labeled compelling, so that interest would satisfy even strict scrutiny." *McCutcheon*, 572 U.S. at 199. Further, contributions distant from election day "can increase the appearance of impropriety and the risk of actual bias." *O'Toole*, 802 F.3d at 790 (upholding denial of preliminary injunction against Ohio statute permitting only 120 day window for judicial candidates to solicit and accept campaign contributions)); *see also North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 715 (4th Cir. 1999), *cert. denied*, 528 U.S. 1153 (2000); *Thalheimer*, 645 F.3d at 1121-24.

Additionally, "[t]he First Amendment does not require [the government] before enacting [legislation], to conduct new studies or produce evidence independent of that already generated by other [governments], so long as whatever evidence the [government] relies upon is reasonably believed to be relevant to the problem the [government] addresses." *Shrink Missouri PAC*, 528 U.S. at 393, n.6 (quoting *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52 (1986)). And, the Supreme Court has acknowledged that its own decisions have created a reliance interest on and for the government. Indeed, "*Buckley* has promoted considerable reliance. Congress and state legislatures have used *Buckley* when drafting campaign finance laws." *Randall v. Sorrell*, 548 U.S. 230, 244 (2006). Therefore, the State is entitled to rely on the governmental interest identified in *Buckley*, repeated many times since the *Buckley* decision, that it has a "strong interest … in combatting corruption and its appearance." *McCutcheon*, 572 U.S. at 227.

In this matter, the State submits that Ark. Code Ann. § 7-6-203(e) advances a legitimate governmental interest, consistent with United States Supreme Court precedence: prevention of corruption and the appearance of such. And, in light of the preceding law, the State is not required to provide proof of actual corruption, or the appearance of such. All the same, the Court need not look farther than relatively recent developments concerning members of the Arkansas

General Assembly, relative to the influence of campaign contributions.  Alternatively, more relative to the time in which the statute was enacted, there was still evidence of corruption in Arkansas politics, which may be exemplified by a conviction in the mid-90s of a state constitutional officer(s).  Furthermore, unlike the other six portions that have been struck as unconstitutional, this section of the statute has stood the test of time – without challenge – for more than twenty years.  *See e.g. Arkansas Right to Life State Political Action Committee v. Butler*, 29 F.Supp.2d 540 (W.D. Ark. 1998).  The fact that this statute has lasted so long without challenge is determinative of its success in achieving that which it was designed to do, consistent with the expressed will of the Arkansas voters.

The State is also entitled to rely upon Congressional precedent.  *See Randall v. Sorrell*, 548 U.S. at 244.  And, as stated, the farther out a campaign contribution is provided, the greater the likelihood of impropriety or bias, or the appearance of such.  *O'Toole*, 802 F.3d at 790.  Two years is not unreasonable, particularly when taking into consideration that if Plaintiff's request is granted, there is nothing in place to prevent a potential candidate from fundraising or accepting campaign contributions for office multiple terms into the future.  Stated differently, this could enable a candidate for an office opening to accept contributions before one, two, or even three terms of the incumbent's office have expired.  Altogether, the temporal restrictions of Ark. Code Ann. § 7-6-203(e) advance a legitimate governmental interest and the mean selected is reasonable.  The Court should uphold the constitutionality of Ark. Code Ann. § 7-6-203(e).

Pleading further, to any and all extent that Plaintiff seeks to argue that the State must affirmatively prove Ark. Code Ann. § 7-6-203(e) accomplishes what is required within constitutional means, it would appear that Plaintiff argues the burden is on the State to provide evidence that corruption *has not occurred* due to the adoption of Ark. Code Ann. § 7-6-203(e)

more than twenty years ago.  This is generally frowned upon.  *See U.S. v. Ollie*, 442 F.3d 1135, 1143 (8th Cir. 2006) ("We understand that the law generally frowns on requiring a party to prove a negative.").  To prove a negative is purely artificial and formal.  *Davis v. U.S.*, 160 U.S. 469, 490 (1895).  Indeed, "[s]ince as a practical matter it is never easy to prove a negative, it is hardly likely that conclusive factual data could ever be assembled.  For much the same reason, it cannot positively be demonstrated that enforcement of the criminal law is either more or less effective…" *Elkins v. U.S.*, 364 U.S. 206, 218 (1960).  As the Supreme Court put it long ago:

> To establish the truth of the answer would, in many cases, require the party to prove a negative.  Take the points raised in the case.  How can a man who has lived forty or fifty years prove that he never had dyspepsia or a diarrhea, or any disease of the heart or bowels?  And how can he prove that his habits of life have always been correct, and that he never drank ardent spirits to the extent of intemperance?  While it may be easy enough to prove the affirmative of one of these questions, it is next to impossible to prove the negative.

*Piedmont & Arlington Life Ins. Co. v. Ewing*, 92 U.S. 377, 378 (1875).

Therefore, for all of these reasons, the Court should not grant Plaintiff's request for the Court to reject the line drawn by the Arkansas General Assembly in Ark. Code Ann. § 7-6-203(e).  It should deny Plaintiff's motion.

## IV.    CONCLUSION

Plaintiff's request for preliminary injunction should be denied.  Plaintiff has failed to establish standing, or the existence of an actual case or controversy.  In addition, the members of the Arkansas Ethics Commission are entitled to sovereign immunity from Plaintiff's complaint and request, and therefore should be dismissed from this matter.  Further, Arkansas courts should first have an opportunity to first address the constitutionality of Ark. Code Ann. § 7-6-203(e) at the appropriate time and through the appropriate means.  Lastly, Ark. Code Ann. § 7-6-203(e)

still withstands Plaintiff's constitutional arguments and satisfies the *Buckley* test.  Thus, for all these reasons, the Court should deny Plaintiff's request.

<div style="margin-left:40%">

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

</div>

By:    Daniel L. McFadden                   

<div style="margin-left:40%">

Ark Bar No. 2011035
Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
PH: (501) 371-2301
Fax: (501) 682-2591
Email: daniel.mcfadden@arkansasag.gov

*Attorney for Defendants*

</div>