IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PEGGY JONES                                                          PLAINTIFF

v.                                    NO. 4:19-CV-00234-JM

LARRY JEGLEY, Prosecuting Attorney For Pulaski County,
In His Official Capacity;
SYBAL JORDAN HAMPTON, In Her Official Capacity As A
Member Of The Arkansas Ethics Commission;
TONY JUNEAU, In His Official Capacity As A Member Of The
Arkansas Ethics Commission;
ASHLEY DRIVER YOUNGER, In Her Official Capacity As A
Member Of The Arkansas Ethics Commission;
ALICE L. EASTWOOD, In Her Official Capacity As A Member
Of The Arkansas Ethics Commission;
LORI KLEIN, In Her Official Capacity As A Member Of The
Arkansas Ethics Commission                                          DEFENDANTS

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION
## FOR PRELIMINARY INJUNCTION

It is undisputed that Plaintiff wishes to engage in conduct that is prohibited by Arkansas law, specifically, she wishes to make campaign contributions prohibited by the Blackout Period imposed by Arkansas Code Section 7-6-203(e). Defendants, however, now contend that Plaintiff does not currently have standing to challenge the Blackout Period; instead, Plaintiff should simply make the forbidden contributions and wait to see if criminal prosecution results. Defendants' argument completely ignores relevant First Amendment precedent from the Eighth Circuit, which makes clear that Plaintiff need not actually violate the Blackout Period in order to have standing to challenge it. Plaintiff, moreover, has alleged that she is refraining from engaging in protected speech because of the Blackout Period, which by itself is injury sufficient to support standing. Defendants cannot use the chill created by the Blackout Period to argue that there is no chill. There is no question that Plaintiff has suffered a harm from the Blackout Period that can be addressed by this Court, giving her standing to sue.

1

Plaintiff has also demonstrated a high likelihood of success on the merits of this case. Defendants point to *zero* evidence of *quid pro quo* corruption resulting from campaign contributions given more than two years prior to an election. Yet that is specifically what the United States Supreme Court has held Defendants must provide in order to uphold the complete restriction on First Amendment activity imposed by the Blackout Period. Defendants cannot simply shout "CORRUPTION" as a rationale to justify any campaign finance restrictions the State sees fit, given their burden of demonstrating that any restrictions are closely-drawn means of addressing *quid pro quo* corruption. Absent *any* evidence to support their position, Defendants necessarily fail to meet that burden. Plaintiff is therefore entitled to a preliminary injunction preventing enforcement of the Blackout Period.

## I.      PLAINTIFF HAS STANDING TO SUE.

Defendants contend that "a person who is not under prosecution should not be permitted to file suit in federal court to seek an advisory opinion" regarding the constitutionality of a limitation on First Amendment activity. (ECF 19 at 7.) Instead, Defendants argue, Plaintiff should first violate the law and "*then* assert a constitutional challenge against the statute in defense against the misdemeanor charge, assuming for argument purposes any such prosecutor exercises prosecutorial discretion to pursue any such charge." (*Id.* (emphasis in original).) But this is the exact opposite of what the Eighth Circuit has held. Indeed, Defendants' argument, if accepted, would chill First Amendment activity far beyond this case by causing persons unwilling to risk prosecution to refrain from vindicating their constitutional rights. Plaintiff has alleged that she is refraining from protected First Amendment speech because the Blackout Period directly prohibits that speech. Nothing more is required to allege standing.

A. **Plaintiff Need Not Violate The Blackout Period To Have Standing To Challenge It.**

The Eighth Circuit could not be clearer that plaintiffs "are not required to expose themselves to arrest or prosecution under a criminal statute in order to challenge a statute in federal court." *Arkansas Right to Life State Political Action Cmte. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998); *see also 281 Care Cmte. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) ("To establish injury in fact for a First Amendment challenge to a state statute, a plaintiff need not have been actually prosecuted or threatened with prosecution.").  Defendants' argument that Plaintiff should simply violate the Blackout Period and then wait to see if Defendant Jegley institutes a prosecution is of course the exact type of choice that the Eighth Circuit's law of standing keeps Plaintiff from having to make.[1]

Notably, although Defendants acknowledge that plaintiffs generally need not violate a statute before having standing to challenge it, they claim that Plaintiff does not have standing to challenge the Blackout Period because there is not "'a *credible* threat of present or future prosecution.'"  (ECF 19 at 6 (quoting *Zanders v. Swanson*, 573 F.3d 591, 593 (8th Cir. 2009))

---

[1] To the extent that Defendants are insinuating that only the recipients of Plaintiffs' contributions are likely to be prosecuted, it cannot seriously be questioned that Plaintiff would have standing to assert this identical claim on their behalf.  *See, e.g*, *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (recognizing that standing in the First Amendment context is relaxed to allow litigants "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression").  Given the unpopularity of challenges to campaign finance laws, it should not surprise the Court that potential candidates are reluctant to challenge the Blackout Period.  For this same reason, although the Ethics Commission Defendants do not have authority to sanction Plaintiff directly, their ability to sanction the recipients of Plaintiff's speech gives Plaintiff standing to assert her First Amendment claims against them, their claimed entitlement to sovereign immunity notwithstanding.  (ECF 19 at 8-9.) The Ethics Commission obviously "has some connection with the enforcement of the act" and thus sovereign immunity does not apply to them.  *Reproductive Health Servs. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005).

3

(emphasis added by Defendants) and citing *Miller v. City of St. Paul*, 823 F.3d 503, 506 (8th Cir. 2016).)  "A credible threat of prosecution" resulting from her speech, however, is a standard that Plaintiff easily satisfies.  In finding the plaintiffs had standing to challenge the other provisions of the very 1996 Act at issue here, the Eighth Circuit held that all that is required is "a specific intent to pursue conduct in violation of the challenged statute."  *Butler*, 146 F.3d at 560; *see also Iowa Right to Life Cmte., Inc. v. Tooker*, 717 F.3d 576, 604 (8th Cir. 2013) ("Merely alleging a specific desire to engage in the proscribed activity is sufficient to confer standing").  "'Where a plaintiff alleges an intention to engage in a course of conduct that is clearly proscribed by the statute,' however, 'courts have found standing to challenge the statute, even absent a specific threat of enforcement.'" *Tooker*, 717 F.3d at 604 (quoting *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 986 (8th Cir. 2009)).  Plaintiff has alleged an intention to engage in "a course of conduct that is clearly proscribed by the statute" – making contributions more than two years before the 2022 election – and thus clearly has standing to challenge the Blackout Period that prohibits such conduct.

Defendants' reliance upon *Zanders* and *Miller* to claim that any fear of prosecution is not credible is clearly misplaced.  The *Zanders* plaintiffs challenged a statute that made it a crime to knowingly make a false report of police misconduct.  573 F.3d at 591.  Because the plaintiffs "did not allege they intended to knowingly make a false report of police misconduct," but were instead concerned that their accurate reports of police misconduct might be wrongly construed as false, "they could not reasonably fear consequences from the challenged statute."  *281 Care*, 638 F.3d at 629 (discussing *Zanders*, 573 F.3d at 592).  Likewise, in *Miller*, the plaintiff failed to demonstrate standing "'to challenge whether the [permitting policies] violate the First Amendment … because he has not shown the requisite intention to bring himself within the scope of' any

conduct proscribed by those policies." *Miller*, 823 F.3d at 507 (quoting *Travis v. Park City Police Dep't*, 277 Fed. Appx. 829, 832 (10th Cir. 2008)).   Unlike the plaintiffs in those cases, Plaintiff here desires to do exactly what a statute prohibits; Article III requires nothing more.

Defendants' reliance upon prosecutorial discretion to claim that Plaintiff's fear is unreasonable is also misplaced.  (ECF 19 at 7.)  Defendants do not present any support for their claim that prosecutors would ignore violations of the Blackout Period.  Moreover, "[t]he Supreme Court has repeatedly found that plaintiffs have standing to bring pre-enforcement First Amendment challenges to criminal statutes, *even when those statutes have never been enforced*." *281 Care*, 638 F.3d at 628 (emphasis added).  Only through an "official policy" of disuse, "or a long history of disuse," does a lack of prosecution diminish a chilling effect.  *Id.*  Defendants have established neither here.  Plaintiff's fear that a prosecution will result if she violates the Blackout Period is credible and is more than enough to give her Article III standing.

**B.      Defendants Cannot Use The Chill Caused By The Blackout Period To Demonstrate That There Is No Chill.**

Defendants contend that "Plaintiff is in no realistic danger of sustaining any actual, or threatened, injury" because "she is refraining from engaging in conduct prohibited by [the Blackout Period]." (ECF 19 at 7.)  Defendants criticize Plaintiff for not identifying the candidates she wishes to support or whether those candidates have announced an intention to run for office. (*Id.*)  In so doing, Defendants are using the fact that the Blackout Period has completely eliminated overt political activity in Arkansas more than two years before an election as evidence that Plaintiff has not suffered an injury sufficient to demonstrate standing to challenge the Blackout Period.  In other words, because the entire political process is chilled by the Blackout Period, Plaintiff cannot personally be chilled by it.

Not surprisingly, the Eighth Circuit has never adopted such an illogical position.  To demonstrate standing, "the plaintiff needs only to establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute." *281 Care*, 638 F.3d at 627.  Indeed, "[s]elf-censorship can itself constitute injury in fact." *Id.* (citing *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988)).  While it is certainly true that there will be no prosecution as long as Plaintiff does not violate the Blackout Period, Plaintiff's restraint is by itself an injury sufficient to give her Article III standing.  Were that not the case, Plaintiff's only avenue to challenge the Blackout Period would be to violate it – exactly what the Eighth Circuit has held she need not do.

Defendants' claim that Plaintiff cannot challenge the Blackout Period unless she first identifies specific, announced candidates to whom she wants to give is also completely misplaced.[2] Defendants cite no support for this proposition, which is contrary to Eighth Circuit precedent. Indeed, in *Butler*, the Eighth Circuit noted that the plaintiffs had standing to challenge other provisions of the 1996 Act by simply alleging that they "would like to make contributions in excess of $100 to the candidates enumerated in Arkansas Code § 7-6-203(b)(1) and $300 to the candidates enumerated in Arkansas Code § 7-6-203(b)(2)." *Butler*, 146 F.3d at 560.  The Eighth Circuit did not require the *Butler* plaintiffs to identify the candidates they wished to support before challenging prohibitions on supporting those candidates; a general intent to support candidates with contributions prohibited by state law was all that was required.  Of course, to require a citizen to announce the candidate she wishes to support in order to enforce her right to support the candidate

---

[2] Of course, the absence of announced candidates is itself a result of the chilling effect of the Blackout Period.  What candidate would declare for office if he or she cannot even raise enough money to rent the microphone to make the announcement?  Once again, the State improperly confuses the complete chill of political activity caused by the Blackout Period with the absence of chill altogether.

– particularly when the restriction at issue is a popular, albeit unconstitutional, one – is itself chilling.  Article III does not require such a result.

### C.      This Court Should Not Abstain From Hearing Plaintiff's Claims.

As a last ditch effort to avoid having this Court decide the constitutionality of the Blackout Period, Defendants suggest that this Court should abstain in favor of allowing Arkansas state courts to decide this issue first.  (ECF 19 at 9-11.)  Not surprisingly, Defendants do not cite a single federal court that refused to decide a First Amendment case in favor of a future, post-prosecution determination by a state court.  Indeed, if Defendants' position were correct, both Judge Morris Arnold in *Russell v. Burris*, 146 F.3d 563 (8th Cir. 1998), and Judge Waters in *Arkansas Right to Life State PAC v. Butler*, 29 F. Supp. 2d 540 (W.D. Ark. 1998) – the two cases that have invalidated the other six of the seven provisions in the 1996 Act – should have abstained in favor of state courts.  Plaintiff respectfully submits that those respected judges committed no error.

Defendants' entire argument on this point is premised upon the rule that courts should not declare a statute unconstitutional if it is "reasonably susceptible to a narrowing construction" that would save its constitutionality, suggesting that an Arkansas court might give the Blackout Period such a construction.  (ECF 19 at 9.)  But the statute creating the Blackout Period could not be simpler; it prohibits contributions more than two years before an election.  How a state court could narrow such a statute is left unanswered by Defendants.  There is simply no reason why this Court, like Judge Arnold in *Russell* and Judge Waters in *Butler*, should not perform its constitutional duty and vindicate Plaintiff's First Amendment rights.

## II. PLAINTIFF WILL LIKELY SUCCEED ON THE MERITS BECAUSE DEFENDANTS HAVE PUT FORTH NO EVIDENCE AS TO HOW THE BLACKOUT PERIOD PREVENTS *QUID PRO QUO* CORRUPTION.

Corruption is bad; on this point the parties agree.  Contrary to Defendants' argument, however, they cannot justify the Blackout Period simply by chanting the word "corruption." Defendants have not presented any evidence demonstrating that contributions made more than two years before an election caused *quid pro quo* corruption in Arkansas prior to the enactment of the Blackout Period.  Indeed, the only evidence of corruption that Defendants cite at all is a vague reference to recent allegations of corruption involving members of the Arkansas General Assembly (ECF 19 at 13-14); Defendants did not attempt to link that corruption to contributions made two years before an election.  Because repeated incantations of the word "corruption" are all that Defendants put forward to justify the Blackout Period, Plaintiff has demonstrated a likelihood of success on the merits that entitles her to injunctive relief.[3]

In her opening brief, Plaintiff clearly explained the constitutional standards applicable to her claim.  First, Plaintiff's desire to make campaign contributions is unquestionably protected speech. (ECF 14 at 5.)  Second, the State bears the burden of demonstrating the constitutionality of the Blackout Period.  (*Id.*)  Third, restrictions on political contributions can only be upheld if "'the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms.'"  (*Id.* at 5-6 (quoting *McCutcheon v. Federal Election Comm'n*, 572 U.S. 185, 191-92 (2014) and *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) (per curiam)).  Fourth, any restriction of campaign contributions must "'target what we have called '*quid pro quo*' corruption or its appearance.'"  (*Id.* at 6 (quoting *McCutcheon*, 572

---

[3] Defendants do not dispute that in a First Amendment case, the analysis for preliminary injunctive relief rests almost entirely upon a showing that Plaintiff is likely to succeed on the merits.  (ECF 14 at 4.)

U.S. at 192).)  Fifth, the State must present some evidence that the prohibited practice may result in *quid pro quo* corruption.  (*Id.* at 6-7 (citing *Zimmerman v. City of Austin, Texas*, 881 F.3d 378, 386 (5th Cir. 2018); *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 390-94 (2000)).  But while Defendants do not appear to dispute these standards, they fail to apply them and instead simply contend that general concerns about corruption are enough to justify the Blackout Period.[4] (ECF 19 at 12.)

The law is clear, however, that general concerns about corruption do not justify unlimited restrictions of First Amendment rights.  Instead, the five undisputed principles set forth above make clear that the Blackout Period cannot stand absent evidence that campaign contributions made more than two years before an election pose a greater threat of *quid pro quo* corruption than contributions made closer to the election.  Because Arkansas already imposes maximum limits on the amounts that can be contributed to candidates, any additional restrictions on contributions must be "justified by evidence that the additional limit serves a distinct interest in preventing corruption that is not already addressed by the base limit." *Zimmerman*, 881 F.3d at 392 (citing *McCutcheon*, 572 U.S. at 192-93).  Here, "[w]hile *Buckley* and the long line of cases following it make clear … the dangers of long contributions … *there is not the same well-trodden path regarding the dangers of contributions made far in time from an election*." *Zimmerman*, 881 F.3d at 392 (emphasis added).  Defendants thus bear the burden of demonstrating why temporal limitations – not just maximum contribution limitations – are needed to satisfy the State's interest in fighting corruption. Despite bearing that burden, Defendants fail to present any evidence to meet it.

---

[4] Plaintiff believes that in all likelihood, the true motivation behind the Blackout Period was not to reduce corruption, but to reduce the length of campaigns, which of course cannot justify a speech restriction.

Absent any reason from Defendants to do otherwise, this Court should follow the analysis used to strike down the blackout periods at issue in *Zimmerman* and *Butler*. In *Zimmerman*, the Fifth Circuit held that there was no evidence demonstrating that a contribution made less than six months before an election was somehow perceived as less corruptive than a contribution made twelve months before an election. 881 F.3d at 392. Absent such evidence, the city could not demonstrate that a maximum contribution limit was insufficient to prevent the appearance of corruption. *Id.* at 392-93. Similarly, in *Butler*, Judge Waters held that blackout periods are not narrowly tailored because they fail to "take into account the fact that corruption can occur at any time." 29 F. Supp. 2d at 553. The court held that the State had produced no "*evidence* that actual corruption has taken place" from contributions made during a session of the General Assembly. *Id.* at 551 (emphasis added). The failure to produce such evidence was fatal because "'the harm that the defendants seek to eradicate *must exist* and its 'cure' must specifically be directed toward elimination of that harm.'" *Id.* (emphasis added) (quoting *Shrink Missouri Gov't PAC v. Mauphin*, 922 F. Supp. 1413, 1422 (E.D. Mo. 1996) (also striking down a blackout period).

Defendants ignore *Zimmerman* and *Butler* and instead rely upon three cases upholding temporal limitations on contributions: *O'Toole v. O'Connor*, 802 F.3d 783 (6th Cir. 2015), *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999), and *Thalheimer v. City of San Diego*, 645 F.3d at 1122. (ECF 19 at 12-13.) In *Zimmerman*, the city relied upon the same three cases; the Fifth Circuit easily distinguished them:

> The cases Austin cites to support its position are not persuasive. First, *O'Toole v. O'Connor*, 802 F.3d 783 (6th Cir. 2015), considered a temporal limit on contributions to judicial campaign committees not politicians or political candidates. *Id.* at 787–88. "But a State's interest in preserving public confidence in the integrity of its judiciary extends beyond its interest in preventing the appearance of corruption in legislative and executive elections." *Williams-Yulee v. Fla. Bar*, —— U.S. ——, 135 S.Ct. 1656, 1667,

10

191 L.Ed.2d 570 (2015).   Accordingly, *O'Toole*'s reasoning is inapplicable here.  Second, *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999), and *Thalheimer v. City of San Diego*, 645 F.3d 1109 (9th Cir. 2011), which upheld temporal limits on campaign contributions without any specific evidence that the timing of a contribution creates a risk of actual corruption or its appearance that is distinct from that created by the size of a contribution, *see Bartlett*, 168 F.3d at 715–16; *Thalheimer*, 645 F.3d at 1122, each predates *McCutcheon*, which, as explained above, requires such evidence.  *See Holmes*, 875 F.3d at 1161 (stating that "additional constraint[s] 'layered on top' " of base limits must "separately ... serve the interest in preventing the appearance or actuality of corruption" (quoting *McCutcheon*, 134 S.Ct. at 1458)).

*Zimmerman*, 881 F.3d at 393.  Defendants' reliance upon cases involving the lower standards applicable in judicial races and cases that predate *McCutcheon*'s requirement of specific evidence "that the timing of a contribution creates a risk of actual corruption or its appearance that is distinct from that created by the size of a contribution," 881 F.3d at 813, illustrates the weakness of their position.  Judge Waters got it right twenty years ago when he held unconstitutional the other blackout periods created by the 1996 Act, the Fifth Circuit correctly applied *McCutcheon* to invalidate more recent blackout periods, and this Court should do the same here.

Defendants provide no explanation of why the Blackout Period is closely-drawn to the State's interest in combatting *quid pro quo* corruption in a manner that cannot be addressed by existing limits on the size of contributions.  Of course, such an explanation would be hard to provide, given that the Blackout Period "prohibits *all* contributions, both large and small, during the specified periods."  29 F. Supp. 2d at 552.  As Judge Waters recognized, because "only *large* contributions pose a threat of actual or perceived corruption," a blanket prohibition on all contributions is unconstitutionally overbroad.  29 F. Supp. 2d at 552.  The Blackout Period is a sledgehammer where, at most, only a scalpel might suffice.  By preventing Plaintiff from making *any* campaign contributions more than two years before the 2022 election, the Blackout Period violates her First Amendment rights.  Injunctive relief is therefore appropriate.

11

## CONCLUSION

The Blackout Period violates Plaintiff's First Amendment right to give financial support to candidates of her choosing at a time of her choosing.   Plaintiff has thus demonstrated a likelihood of success on the merits that entitles her to a preliminary injunction against enforcement of the Blackout Period.   This Court should therefore enjoin Defendants from enforcing the Blackout Period during the pendency of this matter.

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
jtull@qgtlaw.com
cpekron@qgtlaw.com
ckeller@qgtlaw.com
bford@qgtlaw.com


By: Chad W. Pekron
    John E. Tull III (84150)
    Chad W. Pekron (2008144)
    Christoph Keller (2015145)
    Brittany S. Ford (2018102)

*Attorneys for Plaintiff*